No. 22-20517

IN THE
UNITED STATES COURT OF APPEALS

FIFTH CIRCUIT

ELIMELECH SHMI HEBREW-Appellant

VERSUS

TDCJ, Defendant-Appellees

Appeal from the United States District Court

for the Southern District of Texas

Houston Division

APPELLANT'S REPLY BRIEF

_____

ELIMELECH SHMI HEBREW

Prose Appellant
306 N Forest Blvd.
Houston, Texas 77090

CERTIRFICATE OF INTERSTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as describe in 5thCir. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualifications or recusal.

1. **<u>Plaintiff-Appellant</u>**:
   Elimelech Shmi Hebrew
2. **<u>Defendant-Appellees</u>**:

   TDCJ

*<u>s/Elimelech Shmi Hebrew</u>*

Prose Attorney of record for Appellant,

Elimelech Shmi Hebrew, Appellant

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to 5th Cir. R. 28.2.3 and Fed. R. App. P 34(a)(1), Appellees believe the facts and legal arguments in this appeal are adequately presented in the briefs and record, and the decisional process would be significantly aided by oral argument. This case involves the straightforward application of the law to Defendant's-Appellee's responses and the Court of the Southern Districts Decision. However, Appellant welcome the opportunity to present oral argument if the Court determine it would be helpful.

## TABLES OF CONTENTS

**Page**

TABLE OF CONTENTS …………………………………………………….. iii

TABLE OF AUTHORITIES …………………………………………………  iv

ISSUE PRESENTED ……………………………………………………….  1

STATEMENT OF CASE ……………………………………………………  2

ARGUMENT …………………………………………………………..  2

CONCLUSION ……………………………………………………………..  34

CERTIFICATE OF SERIVCE …………………………………………….  39

CERTIFICATE OF COMPLIANCE ………………………………………  40

# TABLE OF AUTHORIEIES

*McDonnell Douglas Corp. v. Green, 411 U.S. 792 (U.S. 1973)*

*Smith v. Dep't. of the Navy, EEOC Appeal No. 0120082983 (Feb. 16, 2010)*

*Vattel, liv. 3, c. 3, 32*

*Kawaljeet K. Tagore v. United States of America*

*Equal Employment Opportunity Commission v. Abercrombie & Fitch Stores, Inc.,*

*Nelson v. Thornburgh, 567 F. Supp. 369, 376 and 380 (E.D. Pa. 1983)*

*Bryant v. Better Business Bureau of Greater Md., Inc., 923 F. Supp. at 740-41 (D. Md. 1996)*

*Buckingham v. United States, 998 F.2d 735, 740 (9th Cir. 1993)*

*Henchey v. Town of North Greenbush, 831 F. Supp. 960, 965 (N.D.N.Y. 1993)*

*Gilbert v Frank, 949 F.2d 637, 642 (2d Cir. 1991)*

*Monette v. Electronic Data Sys. Corp., 90 F.3d 1173, 1184 n.10, 5 AD Cas. (BNA) 1326, 1335 n.10 (6th Cir. 1996);*

*Vande Zande v. Wisconsin Dep't of Admin., 44 F.3d 538, 543, 3 AD Cas. (BNA) 1636, 1638-39 (7th Cir. 1995)*

*Philbrook v. Ansonia Bd. of Educ, United States v. Ballard*

*Trans World Airlines, Inc. V. Hardison, 432 U.S. 63, 84 (1977)*

*United States v. Ballard, 322 U.S. 78, 86 (1944)*

*Patrick v. LeFevre, 745 F.2d 153, 157 (2d Cir. 1984)*

*Thompson v. Borg-Warner Protective Services Corp., No. C-94-4015 MHP, 1996 WL 162990 at \*4 (N.D. Cal. Mar. 11, 1996)*

## ISSUE PRESENTED

The District Court erred in granting the Appellee/Defendant's Order for Summary Judgement. The Court erred in the decision of the interpretation of the McDonnell Douglas test. The Court erred in the decision stating TDCJ's grooming policies are pretext. The Court erred in the decision of TDCJ's incurring an undue hardship. The TDCJ's reason denied me reasonable accommodation and fired me I stated to be pretext is pursuant with Vattel, liv. 3, c. 3, 32.

## PROCEDURAL HISTORY

I, Elimelech Shmi Hebrew brought this lawsuit, pro se, under Title VII of the Civil Rights Act of 1964, 42 U.S.C §2000e et seq., alleging the Texas Department of Criminal Justice unlawfully discriminated against me. The district court dismissed my claims under failure to carry the burden under the McDonnell Douglas framework that TDCJ's grooming policies are a pretext for religious discrimination and there is an undue hardship.

## STATEMENT OF THE CASE

I, Elimelech Shmi Hebrew, brought this lawsuit, pro se, under Title VII of the Civil Rights Act of 1964, 42 U.S.C §2000e et seq., alleging the Texas Department of Criminal Justice (TDCJ). I filed two religious accommodation requests to TDCJ, a department of the government of the U.S. state of Texas which they did not offer or provide me religious accommodation, rather TDCJ DENIED both my religious accommodation request with no further action. In my Original Complaint, I named Bryan Collier, TDCJ and EEO, Rayford Irvin, EEOC, and Christian Menefee, Harris County District Attorney (ROA)[1].

## SUMMARY OF THE ARGUMENT

The Court should reverse the District Court's granting of the Defendant Texas Department of Criminal Justice Motion for Summary Judgment and the dismissing of my Title VII religious discrimination case.

## ARGUMENT

My Title VII claim against the Texas Department of Criminal Justice (TDCJ) is pursuant to the Equal Employment Opportunity Commission (EEOC) authority of Title VII:

Complaints under Title VII are filed with the Equal Employment Opportunity Commission (EEOC). Under Title VII, the Department of Justice has authority to

---

[1] ROA.8

prosecute enforcement actions against state and local government employers upon referral by the EEOC of complaints arising under the Act. Title VII of the Civil Rights Act of 1964 (Title VII). And the first and fourteenth amendments of the U.S. constitution.

The First Amendment provides that Congress make no law respecting an establishment of religion or prohibiting its free exercise. It protects freedom of speech and the right to petition the Government for a redress of grievances. That my right to file this complaint.

The Fourteenth Amendment says no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

I was fired in violation of my Title VII, first and fourteenth amendment constitutional right. The evidence will show the District Court erred in granting the TDCJ's Motion for Summary Judgment and dismissing my Title VII case stating the cause:

"Due to Hebrew's failure to show the TDCJ's grooming policies are a pretext for religious discrimination, the Court finds Hebrew fails to carry his burden under the McDonnell Douglas framework."[2]

## The Court Erred In Decision Of Interpretation Of The McDonnell Douglas Test

The Court erred in the decision to dismiss my case based on Supreme Court case, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (U.S. 1973). The McDonnell Douglas test requires the following conditions to be satisfied: I, the plaintiff must establish a prima facie case of discrimination, I was able to establish my prima facie case as the court affirmed.[3] TDCJ must produce evidence of a legitimate non-discriminatory reason for its actions. TDCJ "must produce evidence" of a legitimate non-discriminatory reason for its actions. TDCJ did not produce any evidence to support a legitimate non-discriminatory reason for denying me reasonable accommodation or for firing me in violation of my Title VII federal and constitutional rights. The Court erred in the decision to dismiss my case based on failing to show TDCJ's grooming policies are a pretext for religious discrimination. I did not state anywhere in my case that TDCJ's grooming policies are a pretext for religious discrimination. I explicitly requested the court to "cease and desist" TDCJ's discriminating, unlawful policies and practices. I requested the court to sanction attorney Ellis for blatantly violating the Courts Orders in not providing me

---

[2] ROA.872
[3] ROA.872

with notice of filing according to Tex. R. Civ. P. 8. I am prose, I do not receive electronic notification. Here is what I requested from the court:

Herein is why I humbly requested in advance the court to "cease and desist" TDCJ's discriminating, unlawful policies and practices:

- I request for: the Court to adhere to what the Commission has found that, in cases involving discriminatory policies or practices, the appropriate relief includes ordering the agency to *"cease and desist"* from adhering to that policy or practice. For example, in *Smith v. Dep't. of the Navy*, EEOC Appeal No. 0120082983 (Feb. 16, 2010), request for reconsideration denied, EEOC Request No. 0520100287 (July 9, 2010), the Commission ordered the agency to cease and desist from requiring that all contact with EEO Counselors be arranged by management officials. Act complainant rejects an offer of resolution made in accordance with 29 C.F.R. § 1614.109(c) and does not obtain more relief than the agency had offered, or in the rarest of other circumstances, might an agency limit or deny an award of fees.

- I request for: the Court to order TDCJ to *"cease and desist"* its bias grooming polices and practice of denying employees & applicants reasonable accommodation and firing those of a protected class due to their faith, religion, color, race, and creed.

- I request for: the Court to order TDCJ to *"cease and desist"* the illegal policy and practice under TDCJ's **Essential Functions of a Correctional Officer and Additional Requirements With or Without Reasonable Accommodation** having, unbeknown to employees, applicants, and future employees, members of a protected class to check the acknowledgement box 1. (PERS 402(09/01/2017). That TDCJ then uses in DENIAL of his/her rights to reasonable accommodation and termination in violation of Title VII, the constitution and all equitable federal and state laws. According to TDCJ's expert witness Richard Babcock affidavit TDCJ has for twenty-four years used this policy and practice to terminate employees and applicants that are members of a protected class:

- I request for: the Court order TDCJ to add the Hebrew ʿÑ̃äzárìte to its Example: as Rastafarian dreadlocks, or Jewish peyes (sidelocks)). We

5

ʾḤébrēws are a nation of people America do not recognize. Our ʾḤébrēw ʾNäzárīte vow-long locks and beard is the origin for which the Rastafarian dreadlocks, and the Jewish peyes (sidelocks)) derived from

- I request for: The Court to investigate the nexus between TDCJ, EEO and the EEOC. There appears to be a conflict of interest between these government agencies TDCJ the criminal justice system and the EEO and EEOC the employment branch renaissance of a modern-day salve plantations organized via the prison industrial complex operating unbeknownst to American citizens.

- Again, AG attorney Ellis violated the Courts Orders in not providing me with notice of filing according to Tex. R. Civ. P. 8. This is not Ellis's first blatant disregard for the Courts Orders and my time and the fair opportunity to defend my case this is the third time she failed to notify me of filing. Attorney Ellis's action, if not for the honorable Judge ʾDáüəd Ḥīttner's mercy of allowing me to reply to the defendant TDCJ's Motion for Summary Judgement, could have dismissed my case for failure to oppose. I am most grateful to ʾDáüəd Ḥīttner for allowing me the opportunity to oppose TDCJ's motion for summary judgment. This is a very serious action committed deliberately by Ellis and her actions would have caused me irreparable harm. The Court must sanction these actions committed by attorney Ellis pursuant to Civil Practice and Remedies Code Title 2. Chapter 10 Sec. 10.004. Violation; Sanction.  (a)(b)(c) (1) (2) (3).

## The Court Erred In Decision Stating TDCJ's Grooming Policies Are Pretext

I stated the TDCJ's reason for firing me for my ʾḤébrëw ʾÑäzárìte vow of long locks and beard is pretext pursuant with *Vattel, liv.* 3, c. 3, 32 the reasons assigned to justify an act, which have only the appearance of truth, and which are without foundation; or which if true are not the true reasons for such act. On this premise TDCJ allegedly fired me: beards and hair of my length are prohibited per PD-28 Dress and Grooming Standards, therefore, my request to wear a beard and long locks

is DENIED with no further action. Below is the letter I received from TDCJ's

Employee Relations James Booker's stating:

> Employee Relations received your request for a religious accommodation in
> which you have requested to have a beard and long locks of hair. The Civil
> Rights Act of 1964, 42 USC§§ 2000e (j) requires employers to reasonably
> accommodate employees by allowing them the opportunity to worship or
> observe their religious practices…additionally, beards and hair of this length
> are prohibited per PD-28 Dress and Grooming Standards, therefore, your
> request to wear a beard and long locks is DENIED with no further actions.[4]

TDCJ's alleged reason for firing me states; beards and hair of this length are

prohibited per PD-28 Dress and Grooming Standards, therefore, your request to wear

a beard and long locks is DENIED, Is pretextual and a violation of The Civil Rights

Act of 1964, 42 USC§§ and confirms TDCJ fired me willingly and knowingly in

violation of Title VII federal and constitutional laws state:

> Examples of religious dress and grooming practices may include: wearing
> religious clothing or articles (e.g., a Christian cross, a Muslim hijab
> (headscarf), a Sikh turban, a Sikh kirpan (symbolic miniature sword));
> observing a religious prohibition against wearing certain garments (e.g., a
> Muslim, Pentecostal Christian, or Orthodox Jewish woman's practice of



Hebrew Nazarite     Rastafarian dreadlocks     Jewish peyes

> wearing modest clothing, and of not wearing pants or short skirts); or *adhering*

---

[4] ROA.747

to shaving or hair length observances (e.g., Sikh uncut hair and beard, Rastafarian dreadlocks, or Jewish peyes (sidelocks)). In most instances, employers are required by federal law to make exceptions to their usual rules or preferences to permit applicants and employees to observe religious dress and grooming practices.

The illustration I present above of me a ʾḤéḇrëw ʾÑäzárìte, a Rastafarian dreadlocks and a Jewish peyes are the three faiths-religions requiring the adoring of long locks and long beards. Title VII federal laws and the first and fourteenth amendments of the constitution protect our freedom of faith-religion and expression explicitly. I ʾḤéḇrëw am a ʾḤéḇrëw with the ʾÑäzárìte vow long locks and beard upon my head unto our ʾÄbbä ʾËlôḥìm pursuant to our ʾḤéḇrëw ʾTôräh revealed via the King James Version (KJV) of our ʾTôräh as it is written:

> 6 And ʾËlôḥìm spake unto ʾMôšḥéh, saying,
> 2 Speak unto the children of ʾYìzräél, and say unto them, When either man or woman shall separate themselves to vow a vow of a ʾÑäzárìte, to separate themselves unto ʾËlôḥìm:
> 3 He shall separate himself from wine and strong drink, and shall drink no vinegar of wine, or vinegar of strong drink, neither shall he drink any liquor of grapes, nor eat moist grapes, or dried.
> 4 All the days of his separation shall he eat nothing that is made of the vine tree, from the kernels even to the husk.
> 5 All the days of the vow of his separation there shall no razor come upon his head: until the days be fulfilled, in the which he separateth himself unto ʾËlôḥìm, he shall be ʾhôly and shall let the lockš of the hair of his head grow.

I ʾḤéḇrëw with the ʾÑäzárìte vow upon my head unlike the Rastafarian dreadlocks and Jewish peyes. My ʾḤéḇrëw ʾfáìth-religion and ʾÑäzárìte vow is ignored, demonized, and criminalized and my Title VII federal and constitutional rights violated by Texas Department of Criminal Justice (TDCJ) and Harris County

Sheriff's Office (HCSO) without consequence. The Rastafarian dreadlocks and Jewish peyes under Title VII federal and constitutional law have their right to freedom of religion and expression and is explicitly protected being accepted by the federal government. While the federal government has not recognized we the ˈḤéḇrëw ˈYìzräélìte ˈYäḥūdìm that have been in this country for four hundred and three years from sixteen nineteen until two thousand twenty-two [1619-2022]. For this reason, I requested the Court to add our ˈḤéḇrëw ˈÑäzárìte vow to the EEOC federal grooming policies, for our ˈḤéḇrëw ˈÑäzárìte vow to be recognized equally with the Rastafarian dreadlocks and Jewish peyes being that our ˈḤéḇrëw ˈÑäzárìte vow existed thousands of years before both Rastafarian dreadlocks and Jewish peyes.

> Our ˈÑäzárīte vow-long locks and beard is the origin for which the Rastafarian dreadlocks, and the Jewish peyes (sidelocks)) derived. I requested the court to add ˈḤébrēw ˈÑäzárīte to the examples:

> Herein is why I humbly requested in advance the court add ˈḤébrēw ˈÑäzárīte to the

> Examples stating:
> I request for: the Court order TDCJ to add the ˈḤéḇrëw ˈÑäzárìte to its Example: as Rastafarian dreadlocks, or Jewish peyes (sidelocks)). We ˈḤébrëws are a nation of people America do not recognize. Our ˈḤébrëw ˈÑäzárīte vow-long locks and beard is the origin for which the Rastafarian dreadlocks, and the Jewish peyes (sidelocks)) derived from.

Title VII federal laws establishes my right to beard and hair length observances and TDCJ violated my right by not providing me reasonable accommodation, and for firing me. The reason TDCJ claimed that is I was DENIED and fired:

> beards and hair of this length are prohibited per PD-28 Dress and Grooming Standards, therefore, your request to wear a beard and long locks is DENIED with no further actions.[5]

Title VII affirms the TDCJ's claim is false and pretext. TDCJ knew Title VII federal law. It is written in the second paragraph of the letter I received from TDCJ's Employee Relations, James Booker, where he quotes Title VII stating:

> The Civil Rights Act of 1964, 42 USC§§[6]

TDCJ blatantly and intentionally ignored federal and constitutional laws. TDCJ willingly and knowingly failed to perform its duty pursuant to Title VII federal and constitutional laws. The Court must overturn the district court decision.

**The Court Erred In Decision Of TDCJ's Incurring An Undue Hardship**

The very reason the court claimed TDCJ's undue hardship proves the error in the decision stating:

> "Further, long hair and beards present a security concern as they may be used to introduce contraband into the prison. This in turn, creates additional work for security personnel who must search officers before granting them entrance into the prison facilities. Based on this, and the reasoning above, the Court finds that TDCJ could not have reasonably accommodated Hebrew's religious beliefs without incurring an undue hardship."

---

[5] *Id*
[6] *Id*

The court erred in stating:

> Based on this, and the reasoning above, the Court finds that TDCJ could not have *reasonably accommodated Hebrew's* religious beliefs without incurring an undue hardship."

The Court found TDCJ did not provide me with reasonable accommodation and TDCJ did not dispute that but in fact admitted it did not accommodate my religious beliefs as it is affirmed below:

> "Thus, the Court finds Hebrew establish a prima facie case of failure to accommodate his religious belief. Nor does the TDCJ dispute that it did not accommodate Hebrew's religious beliefs."[7]

TDCJ denied providing me "reasonable accommodation" the court erred in its decision finding TDCJ could not have reasonably accommodated my religious beliefs without incurring an undue hardship. TDCJ failed to accommodate my religious belief, nor did TDCJ dispute that it did not accommodate my religious beliefs. If a particular accommodation would be an undue hardship, the employer must try to identify another accommodation that will not pose such a hardship. The US Department of Labor examples of religious accommodations include scheduling changes (arrivals, departures, floating/optional holidays, flexible work breaks and any other scheduling changes); voluntary shift substitutions and/or swaps; job reassignments, such as changes of position tasks and lateral transfers; and modifications to workplace practices, policies and procedures. TDCJ violated its

---

[7] ROA.872

Title VII federal duty to provide me reasonable accommodation. TDCJ did not attempt to identify another accommodation that would not pose an undue hardship or job reassignment, such as changes of position tasks and lateral transfers; and modifications to workplace practices, policies and procedures. I stated in my deposition that two TDCJ's female recruiters stated I could present my college degree during the interview I would be exempt from taking the TDCJ's exam and when I was hired, I could request to move to another position, saying that TDCJ have many positions besides Correctional Officer:

Heather: And they were TDCJ recruiters

Hebrew: Yes ma'am, two ladies African American Women

Heather: Do you remember their names by chance

Hebrew: No, no because I wasn't going to do it, they talk me into doing it.

Heather: Understood I just figured I would ask. In that conversation did they tell you to apply for the Correctional III Officer job?

Hebrew: Yeah, that's what they told me, then they said I could apply for something else once I get qualified, I guess that's the position they were there for, I don't think they were there she was saying you could have other positions but to me it appears that was the position they had open and that's what they were recruiting for. I didn't know when I got there but they told you can get the bonus and you could apply just in case something happened. I think that's what they were there for, they weren't there for Librarians. They didn't have anything out to say other positions. They said this position you get a $3000.00 bonus if this is your first and if you have a degree, you are exempt. I don't remember their names but I have the date and times you can look it up[8]

---

[8] ROA.630

In my deposition I was asked if I was offered another job would I have taken it, I stated if offered:

> Heather Dyer: So, if you had been offered a job as a Law Librarian instead of a correctional officer
>
> Hebrew: If they would have offered it

The court erred in the claim TDCJ could not have reasonably accommodated my religious beliefs without incurring undue hardship. TDCJ eliminated its undue hardship defense in violating my Title VII federal and constitutional religious right to reasonable accommodation. TDCJ cannot claim it could not <u>reasonably accommodate</u> my religious beliefs without incurring an undue hardship for its defense when TDCJ is guilty of denying me <u>reasonable accommodation</u>. Moreover, the case TDCJ cited *Kawaljeet K. Tagore v. United States of America*, about undue hardship for its defense. Tagore had recently been baptized into Sikhism religion wearing a kirpan which is an ingle-edged dagger or knife as part of the Sikh faith. Tagore entered a federal building, the IRS building without detection here in Houston, Texas. After discussing the issue with Baker-Jones, Narvaez placed Tagore on an interim Flexiplace arrangement so she could work at home until the matter was resolved:

> Legal Director for the Sikh Coalition, which explained that wearing the kirpan is a mandatory article of the Sikh faith. The letter asserted that kirpans are less dangerous than scissors, box cutters, or other objects that are regularly brought into federal buildings. Narvaez forwarded Tagore's request for a security waiver to Micralyn Baker-Jones ("Baker-Jones"), an IRS labor specialist.

> After discussing the issue with Baker-Jones, Narvaez placed Tagore on an interim Flexiplace arrangement so she could work at home until the matter was resolved.

My religious request was to wear my ʾḤéḇrëw ʾÑäzárìte vow long locks and beard that I have been separated to our ʾÄbbă ʾʾËlôħìm for over two decades. On August 19, 2019, I filed a Religious Accommodation Request, TDCJ denied my request and On August 20, 2019, I was fired by TDCJ. The U.S.A did not claim Kawaljeet K. Tagore wearing a kirpan, an ingle-edged dagger or knife as part of the Sikh faith was a security concern. Tagore was placed on an interim Flexiplace arrangement so she could work at home until the matter was resolved. There was no undue hardship due to the IRS burden of her entry into IRS federal building. However, the court in my case described part of the decision for dismissing my case for alleged undue hardship as follows:

> Further, long hair and beards present a security concern as they may be used to introduce contraband into the prison. This in turn, creates additional work for security personnel who must search officers before granting them entrance into the prison facilities.[9]

Tagore wore a kirpan-knife and there was no defense for undue hardship. The kirpan would create additional work for security personnel who must search employees before granting them entrance into the IRS federal facilities. Kawaljeet K. Tagore case was not dismissed for undue hardship Tagore's dismissal and the Court's

---

[9] ROA.872

decision was founded under § 930(d). We agree with the court's determination that Tagore's kirpan is not permitted under the exceptions to Section 930(a). The Supreme Court explicitly establishes the failure to provide reasonable accommodation is intentional discrimination "because of religious practice." The Court's decision in *Equal Employment Opportunity Commission v. Abercrombie & Fitch Stores, Inc*., the Court definitively establishes Title VII "affirmative obligates" employers in my case TDCJ was to make exceptions to neutral employment policies to accommodate my religious beliefs and practices as affirmed below:

> The Court held that to avoid summary judgment in a religious accommodation case, a job applicant with a bona fide need for religious accommodation must prove only that a prospective employer's desire to avoid the accommodation was a motivating factor in its decision not to hire her. She need not prove the employer had actual knowledge of her need for religious accommodation. In an 8-1 decision, the Court definitively establishes:
>
> • Title VII "affirmatively obligates" employers to make exceptions to neutral employment
>
> policies to accommodate employees' religious beliefs and practices;
> • A failure to make such an exception is a form of disparate treatment: it is intentional
> discrimination "because of" religious practice;
>
> • The U.S. Court of Appeals for the Tenth Circuit erred when it inserted an "actual knowledge" requirement into Title VII's prohibition against disparate treatment on the basis of religious practice; and
>
> • An employer who makes an employment decision "with the motive of avoiding [a religious] accommodation" violates Title VII, even if the applicant or employee needing accommodation never requested accommodation and the employer lacks actual knowledge that accommodation is needed because of religion.

Additionally, the Court's statement that Title VII does not require "mere neutrality" with regard to religious practices, but instead "gives them favored treatment" by "affirmatively obligating employers not 'to fail or refuse to hire or discharge any individual . . . because of such individual's 'religious observance and practice' " should encourage employers to evaluate their dress code policies to ensure they are justified by a legitimate, nondiscriminatory business reason. While the Court did not address the issue of undue hardship, its emphasis on the favored treatment to be afforded religious practices could be an indication it will closely scrutinize an employer's undue hardship defense. TDCJ did not provide the court with evidence to support its alleged claim of undue hardship as required by the law stating:

> Undue hardship must be based on an individualized assessment of current circumstances that shows that a specific reasonable accommodation would cause significant difficulty or expense. A determination of undue hardship should be based on several factors, including:
>
> - the nature and cost of the accommodation needed;
>
> - the overall financial resources of the facility making the reasonable accommodation; the number of persons employed at this facility; the effect on expenses and resources of the facility;
>
> - the overall financial resources, size, number of employees, and type and location of facilities of the employer (if the facility involved in the reasonable accommodation is part of a larger entity);
>
> - the type of operation of the employer, including the structure and functions of the workforce, the geographic separateness, and the administrative or fiscal relationship of the facility involved in making the accommodation to the employer;

- the impact of the accommodation on the operation of the facility.

Under the ADA, "undue hardship" is "an action requiring significant difficulty or expense." 42 U.S.C. § 12111(10)(A) (1994).[10] Undue hardship "refers to any accommodation that would be unduly costly, extensive, substantial, or disruptive, or that would fundamentally alter the nature or operation of the business.[11] This defense include: the size of the employer; the size of its budget; nature of its operation; number of employees; structure of its workforce and the nature and cost of the accommodation. Id. The larger the employer, the larger the budget and the greater the burden it will be expected to assume. See, e.g., *Nelson v. Thornburgh*, 567 F. Supp. 369, 376 and 380 (E.D. Pa. 1983); EEOC Title I Technical Assistance Manual at III-12.20.[12] In order to withstand judicial scrutiny, an employer's undue hardship defense must have a strong factual basis. *Bryant v. Better Business Bureau of Greater Md., Inc*., 923 F. Supp. at 740-41 (D. Md. 1996).[13] Id.; see also *Buckingham*

---

[10] The EEOC's interpretative guidance explains that undue hardship means "significant difficulty or expense in, or resulting from, the provision of an accommodation. 29 C.F.R. app. § 1630.2(p) at 408.

[11] 29 C.F.R. app. § 1630.2(p) at 408 (citing S. Rep. No. 116, 101st Cong., 1st Sess. 35 (1989); H.R. Rep. No. 485, 101st Cong., 2d Sess., pt. 2, at 67 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 349).

[12] Courts have also deferred to the EEOC's interpretation of its regulations in the agency's Title I Technical Assistance Manual. See, e.g., Thompson v. Borg-Warner Protective Services Corp., No. C-94-4015 MHP, 1996 WL 162990 at *4 (N.D. Cal. Mar. 11, 1996) (according "broad deference" to interpretations in the EEOC 1995 ADA Manual on Enforcement Guidance, citing Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984)).

[13] Otherwise known as a "TDD," or "telecommunications device for the deaf," this device functions like a telephone for people who are deaf. The device allows someone who is deaf to

*v. United States*, 998 F.2d 735, 740 (9th Cir. 1993) ("An employer, to meet its burden under the [Rehabilitation] Act, may not merely speculate that a suggested accommodation is not feasible."); *Henchey v. Town of North Greenbush*, 831 F. Supp. 960, 965 (N.D.N.Y. 1993) (under the Rehabilitation Act, "the ultimate burden of proof on the issue of reasonable accommodation is on the employer.") (citing *Gilbert v Frank*, 949 F.2d 637, 642 (2d Cir. 1991)). Undue hardship "refers to any accommodation that would be unduly costly, extensive, substantial, or disruptive, or that would fundamentally alter the nature or operation of the business. The ADA definition of undue hardship does not include any consideration of a cost-benefit analysis; see also House Education and Labor Report, supra note 6, at 69 ("[T]he committee wishes to make clear that the fact that an accommodation is used by only one employee should not be used as a negative factor counting in favor of a finding of undue hardship."). See 42 U.S.C. § 12111(10)(B) (1994); 29 C.F.R. § 1630.2(p)(2) (1997); 29 C.F.R. pt. 1630 app. § 1630.2(p) (1997); TAM, supra note 49, at 3.9, 8 FEP Manual (BNA) 405:7005-07. Furthermore, the House of Representatives rejected a cost-benefit approach by defeating an amendment which would have presumed undue hardship if a reasonable accommodation cost more than 10% of the employee's annual salary. See 136 Cong. Rec. H2475 (1990), see also

---

communicate over the telephone lines by typing directly to other TDD users, or through a "relay" operator to communicate with any telephone user.

House Judiciary Report, supra note 6, at 41; 29 C.F.R. pt. 1630 app. § 1630.15(d) (1997). Despite the statutory language and legislative history, some courts have applied a cost-benefit analysis. See, e.g., *Monette v. Electronic Data Sys. Corp*., 90 F.3d 1173, 1184 n.10, 5 AD Cas. (BNA) 1326, 1335 n.10 (6th Cir. 1996); *Vande Zande v. Wisconsin Dep't of Admin*., 44 F.3d 538, 543, 3 AD Cas. (BNA) 1636, 1638-39 (7th Cir. 1995). A court examining a Title VII religious discrimination issue should heighten its examination in the sincerity prong of the analysis. *Philbrook v. Ansonia Bd. of Educ, United States v. Ballard.* [14] In so doing, a court should employ a greater level of scrutiny into the sincerity of each employee's particular belief on a case-by-case basis to determine if the employee sincerely holds the belief.[15] Title VII's accommodation provision gives religious practice "favored [rather than lesser] treatment." *EEOC v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028, 2034 (2015) *Weber*., 199 F. 3d at 273 (citing *Trans World Airlines, Inc. V. Hardison*, 432 U.S. 63, 84 (1977)). The U.S. Supreme Court has defined "undue hardship" for purposes of Title VII as imposing "more than a de minimis cost" on the operation of the employer's business. Under the Guidance, factors to be considered when assessing hardship include the "identifiable cost in relation to the size and operating costs of

---

[14] Philbrook v. Ansonia Bd. of Educ., 757 F.2d 476, 481 (2d Cir. 1985), aff'd and remanded, 479 U.S. 60 (1986); United States v. Ballard, 322 U.S. 78, 86 (1944); Patrick v. LeFevre, 745 F.2d 153, 157 (2d Cir. 1984)

[15] Patrick, 745 F.2d at 157

the employer and the number of individuals who will in fact need a particular accommodation." The "de minimis cost" means no more than 5 percent of the total power flows in both directions, calculated in accordance with the "5 percent test" set forth in IRS Notice 88-129. The Supreme Court definition of "undue hardship" for purposes of Title VII as imposing "more than a de minimis cost" on the operation of the employer's business. To obtain just relief amount for my Title VII claim and prove TDCJ's allegation of undue hardship is false. I requested the court to request TDCJ to provide its net worth as well as TDCJ-EEO Director Bryan Collier to provide his net worth required in Sec. 1. Sec. 41.001, Sec. 41.0115 Civil Practice and Remedies:

**S.B. No. 735**
**AN ACT**

Relating to discovery of evidence of the net worth of a defendant in connection with a claim for exemplary damages.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1.  Section 41.001, Civil Practice and Remedies

Code, is amended by adding Subdivision (7-a) to read as follows:
(7-a) "Net worth" means the total assets of a person minus the total liabilities of the person on a date determined appropriate by the trial court. SECTION 2.  Chapter 41, Civil Practice and Remedies Code, is amended by adding Section 41.0115 to read as follows:

Sec. 41.0115.  DISCOVERY OF EVIDENCE OF NET WORTH FOR

EXEMPLARY DAMAGES CLAIM.

(a)  On the motion of a party and after notice and a hearing, a trial court may authorize discovery of evidence of a defendant's net worth if the court finds in a written order that the claimant has demonstrated a substantial likelihood of success on the merits of a claim for exemplary damages. Evidence submitted by a party to the court in support of or in opposition to a motion made under this subsection may be in the form of an affidavit or a response to discovery.

I requested for the TDCJ's and Bryan Collier's net worth. I requested before for TDCJ to provide my video deposition evidence that was not provided. After nearly a month waiting for the video deposition. I filed to the Court a motion to compel the evidence from TDCJ of which attorney Ellis falsely stated my actions were improper. Therefore, I request for the TDCJ's and Bryant Collier's net worth pursuant with S.B. No. 735 AN ACT Section 41.001(a). If not provided I will file with the Court a motion to compel TDCJ's and Bryant Collier's net worth. [16]

The court closed my case before I could request a motion to compel TDCJ and TDCJ-EEO Director Bryan Collier to provide their net worth. The court erred in closing my case and granting TDCJ summary judgment under allegation of undue hardship that had not been proven. The U.S. Supreme Court has defined "undue hardship" for purposes of Title VII as imposing "more than a de minimis cost" on the operation of the employer's business. There is no documented evidence TDCJ provided the court reflecting its net worth nor is there any documented evidence Bryan Collier provided the court his net worth which is required by law for the defendants TDCJ and Bryan Collier to adhere to. The court has not provided any documented material facts in this case of TDCJ or Bryan Collier's calculated "de

---

[16] ROA.659

minimis cost" is no more than 5 percent of the total power flows in both directions, calculated in accordance with the "5 percent test" set forth in IRS Notice 88-129. The "de minimis cost" is required pursuant with Title VII of undue hardship as imposing "more than a de minimis cost" on the operation of TDCJ and Bryan Collier's business. The Court must overturn the district court decision dismissing my case.

**TDCJ's Reason For Firing Me Is Pretext Pursuant With Vattel, liv. 3, c. 3, 32**

We the ʾḤéḇrëw ʾYìzräélìte have been in this country from sixteen hundred and nineteen unto two thousand twenty-two [1619-2022] four hundred and three years. Our the ʾḤéḇrëw ʾÑäzárìte vow was scribed in our ʾTôräh by ʾʾËlôḥìm and given to us by our ʾḤéḇrëw brother the prophet ʾMôšḥéḥ in our,a the ʾḤéḇrëw year 2368 three thousand four hundred and fifteen years ago. Our the ʾḤéḇrëw ʾÑäzárìte vow was translated in the King James Version (KJV) of our ʾTôräh reproduced in the year sixteen hundred and read unto today the year two thousand twenty-two [1611-2022] four hundred and five years ago. This Judeo-Christian country does not accept or honor our ʾḤéḇrëw ʾÑäzárìte vow. In my first Request for Religious Accommodation, I scribed I am ʾḤéḇrëw with the ʾÑäzárìte vow, this is the response from the Texas Department of Criminal Justice (TDCJ)

> Lance Phillips: Have you ever had a nazerite accommodation request? We have a male employee who refuses to cut his dreadlocks off, even though they go to the his waist. I will have him complete the request.

Terry Bailey: After conversation with Cherie Grossman who oversees the dress and grooming standards, the cadet will not be allowed to remain at the academy, unless he cuts his hair and shaves the beard. Mr. will need to be placed in a leave status until the religious accommodation is approved or denied.[17]

Lance Phillips not knowing or recognizing our ʾÑäzárìte vow, that has been in the bible for over four hundred years insulted my locks and beard calling them dreadlocks and the Attorney General attorney Marlayna Ellis did so as well and I replied to their dishonoring statements saying:



Hebrew Nazarite    Rastafarian dreadlocks    Jewish peyes

Major Philips made a bias statement about the ʾNäzárìte vow upon my head unto ʾĔlôḥīm Philips referred to my "locks" as "dreadlocks" which is an abomination to me a ʾḤébrēw ʾNäzárìte. I am not an adulterous Rastafarian, I do not nor have I never smoked marijuana, cigarettes, cigars, drank coffee, wine, beer, alcohol of any kind nor have I used illegal drugs of any kind and rarely do I take medicine and even less have I used prescription drugs in my life.[18]

Moreover, I do not have long hair as Marlayna Ellis states in her blasphemously and bias statement regarding long hair for unto us the ʾḤébrēws it is written:

---

[17] ROA.747
[18] ROA.828

1Corinthians 11:14 Doth not even nature itself teach you, that, if a ʾăd̠ämäh have long hair, it is a shame unto him?

15 But if a woman have long hair, it is a glory to her: for her hair is given her for a covering.

16 But if any ʾăd̠ämäh seem to be contentious, we have no such custom, neither the temples of ʾĔlô̄ḥīm.[19]

In *Kawaljeet K. Tagore v. United States of America,* Tagore was baptized into the Sikhism religion as such she wore a kirpan which is an ingle-edged dagger or knife as part of the Sikh faith into the federal IRS building without any need of extra security to enter the IRS building Tagore was placed on an interim Flexiplace arrangement so she could work at home until the matter was resolved. TDCJ fired me after one day for my ʾḤéb̠rëw ʾfáìtħ ʾÑäzárìte vow not giving me any interim relief until the matter was resolved I was fired after one day. The court used the bias allegation I may bring illegal contraband into the prison and my safety concerns for dismissing my case. When I have never been in jail for an illegal offense, I have never been brought to court for an illegal offense. I have never smoked marijuana, cigarettes, cigars, drank coffee, wine, beer, alcohol of any kind nor have I used illegal

---

[19] ROA.659

24

drugs of any kind and rarely do I take medicine and even less have I used prescription drugs in my life and I am fifty-six years of age. TDCJ fired me for my ʾḤéb̠rë̈w ʾÑäzárìte vow long locks and beard in violation of Title VII federal and constitutional religious rights that protect other religions: Examples of religious dress and grooming practices may include: wearing religious clothing or articles (e.g., a Christian cross, a Muslim hijab (headscarf), a Sikh turban, a Sikh kirpan (symbolic miniature sword)); observing a religious prohibition against wearing certain garments (e.g., a Muslim, Pentecostal Christian, or Orthodox Jewish woman's practice of wearing modest clothing, and of not wearing pants or short skirts); or adhering to shaving or hair length observances (e.g., Sikh uncut hair and beard, Rastafarian dreadlocks, or Jewish peyes (sidelocks)). Yet the court dismissed my case for the alleged threat of bringing illegal contraband into the prison by way of my ʾhôlylockš. I do not engage in any nefarious activities nor have I in my entire life. TDCJ did not produce any evidence or supporting facts to the racist allegation I would bring contraband into the prison. TDCJ's allegation of bringing contraband into the prison was not a general statement but was directed to me Cadet Hebrew as the material fact affirm:

> On October 4, 2019, Amy West sent an email per Mrs. Davis regarding the amount of hair and beard that I could attempt to conceal contraband. Mrs. Davis's statement I could attempt to bring in contraband is racially bias and stereotypical. Mrs. Davis' statement was not a general statement, she specifically spoke about me Cadet ʾḤéb̠rēw in her statement. The fact that supports my assertion is the fact Davis stated, "should this employee ever

attempt to bring in contraband." Mrs. Davis statement affirm she is talking indisputably about me Cadet ʾḤébrēw for she stated "this employee" which eliminates anyone else. I expressed my disdain of Davis' racially bias and stereotypical statement in my deposition. Mrs. Davis in bias inferred I, a ʾḤébrēw with the ʾNäzárīte vow-long locks and beard upon my head, a man that do not and have never drunk wine or alcohol of any kind, nor used drugs of any kind with the exception of medicine rarely in my life, would bring contraband, an illegal substances into my place of work or anywhere else for that matter to distribute among the already ill, forsaken, and disenfranchised inmates whom many are ʾYīzräelītes-minorities, whom ʾĔlôḥīm sent me to heal and protect, is pathic to say the least.[20]

Title VII protects from stereotypical discrimination TDCJ propagated against me affirmed below:

<h3 style="text-align:center">15-V EVALUATING EMPLOYMENT DECISIONS</h3>

<h3 style="text-align:center">A. RACIAL DISPARATE TREATMENT</h3>

1.  Recognizing Racial Motive

Title VII is violated if race was all or part of the motivation for an employment decision. The most obvious violation is a decision driven by racial animus. Title VII is violated if race was all or part of the motivation for an employment decision. The most obvious violation is a decision driven by racial animus. Racially biased decision-making and treatment, however, are not always conscious. The statute thus covers not only decisions driven by racial animosity, but also decisions infected by stereotyped thinking or other forms of less conscious bias.

TDCJ fired me for the same reason the federal court has not recognized we, the ʾḤébrēw ʾYìzräélite ʾYäḥūdìm, my ʾtrìbe, for four hundred and four years, is because we are the true house of ʾYìzräél. Attorney Generals attorney Marlayna Ellis

---

[20] ROA.659

deceptively and discriminatorily implied my ʾḤéḇrēw "nature" in the case and attempted to separate my ʾḤéḇrēw ʾfàìṫḥ-religion from long locks and beard. I replied to her racist statement:

## NATURE AND STAGE OF THE PROCEEDING

Ellis: At issue is whether TDCJ discriminated against Hebrew on the basis of his religion when they denied his request for a long hair and beard.[21]

Hebrew: The fact of this case affirms beyond a reasonable doubt TDCJ violated my Title VII rights and in a deceptive ploy TDCJ tried to justify the unlawful actions in a disparate attempt to separate I ʾḤéḇrēw a ʾḤéḇrēw ʾāḏämäh from my ʾḤéḇrēw ʾfàìṫḥ and my ʾhôly ʾNäzárīte vow unto ʾĔlôḥīm. TDCJ's disparate attempt to deny me of being a ʾḤéḇrēw trying to separate me from the ʾḤéḇrēw ʾfàìṫḥ and the attempt to minimize our the ʾḤéḇrēw's ʾfàìṫḥ reveals unequivocally just how bias TDCJ's actions were and are against me during the hiring and legal process of this case.[22]

Attorney Ellis questioned my nature, I am free born of the sacrifice of my ʾĂḏōnìyáḥ ʾĂḏäm the begotten ʾṢôŋ of ʾĔlôḥìm of the promise ʾĔlôḥìm made to ʾÁbräḥäm as it is written:

ʾĠälátìâḥìm 4:22 For it is written, that ʾÁbräḥäm had two sons, the one by a bondmaid, the other by a freewoman.
23 But he who was of the bondwoman was born after the flesh; but he of the freewoman was by promise.
24 Which things are an allegory: for these are the two covenants; the one from the mount ʾHôrəb, which gendereth to bondage, which is ʾHàgär.
25 For this ʾHàgär is mount ʾHôrəb in ʾĂrábaḥ: and answereth to ʾYäḥrušḥälayìm which now is, and is in bondage with her children.
26 But ʾYäḥrušḥälayìm which is above is free, which is ʾCḥâyáḥ the mother of us all.

---

[21] ROA.841
[22] ROA.855

I am free born I have never and shall never be a slave or bondman to British|America or any other nation Golem|Chattel. TDCJ illegally altered my document and changed my perfect interview score, and illegally altered my perfect evaluation to debase my



integrity. The AG's Ellis questioning my nature aligns with the evils of this nation and is why TDCJ took digital pictures of me and altered the picture to make me look like a monkey to humiliate me in secret. Via the discovery evidence, what TDCJ did in the dark was brought to light. I expressed my disdain of TDCJ racist portrait of me ˈHḗḅrëw a ˈHḗḅrëw ˈÑäzárìtes stating:

Attorney Dyer: And then the next page it's kinda blurry

ʾḤébrēw: Yeah blurry, they did that on purpose. That looks like a monkey, that don't look nothing like me. Let everybody see that, ya'll see that. How they do the black man. There's no way on Earth that I look like that. That's ridiculous. That's not a problem, look at that picture

Dyer: Well you know I have a bad printer too to be honest

ʾḤébrēw: No, I'm just saying, look at that. You see what they doin to me

Dyer: I understand I just wanna make sure

ʾḤébrēw: They have me lookin like a monkey

Dyer: I just wanted to make sure it was you

ʾḤébrēw: That's why I want his camera on me to make sure this is how a

ʾḤébrēw ʾNäzárīte looks, I don't look like that, we don't look like that.

TDCJ not only tried to slander my blameless and perfect walk before ʾĔlôḥīm with unyielding integrity by way of the discovery evidence, but I also found that TDCJ, with racist animus, egregiously altered my pictures to make me look like a monkey, these images were distributed throughout the department and the Attorney General's Office. The pictures came from the pictures Philips took of me when Good separated me from the class and brought me to Philips office. In the picture I am still holding the class documents in my hands. Philips took the pictures of me with a digital camera, there is no way in this digital age a picture can be this augmented with darkness except it was done so intentionally, which is what happened here. Someone with TDCJ altered my pictures to make me look like a monkey affirmed below:

29

I spoke about my disdain of this picture of me the TDCJ altered to make me look like and monkey in my deposition saying:

Attorney Dyer: And then the next page it's kinda blurry

ʾḤébrēw: Yeah blurry, they did that on purpose. That looks like a monkey, that don't look nothing like me. Let everybody see that, ya'll see that. How they do the black man. There's no way on Earth that I look like that. That's ridiculous. That's not a problem, look at that picture

Dyer: Well you know I have a bad printer too to be honest
    ʾḤébrēw: No, I'm just saying, look at that. You see what they doing to me
Dyer: I understand I just wanna make sure

ʾḤébrēw: They have me looking like a monkey

Dyer: I just wanted to make sure it was you

ʾḤébrēw: That's why I want his camera on me to make sure this is how a

ʾḤébrēw ʾNäzárīte looks, I don't look like that, we don't look like that. With deception TDCJ tried to humiliate me in secret but everything done in the dark shall be seen in the light as ʾĂḏʾäm said:
ʾŠhäkär [Luke] 12:1 In the mean time, when there were gathered together an innumerable multitude of people, insomuch that they trode one upon another, he began to say unto his disciples first of all, Beware ye of the leaven of the Pharisees, which is hypocrisy.
2 For there is nothing covered, that shall not be revealed; neither hid, that shall not be known.
3 Therefore whatsoever ye have spoken in darkness shall be heard in the light; and that which ye have spoken in the ear in closets shall be proclaimed upon the housetops.
No matter how much TDCJ, the HCSO and America try to demean me, the more the light of my ʾāḏōnái ʾĂḏʾäm shines through my heart, as can be seen in the picture used in an attempt to humiliate me in secret. For as ʾĂḏʾäm declared what was done in dark was brought to light. You can see my ʾāḏōnái

ʾŠtär, the ʾŠtär of ʾĂḏʾäm glowing upon me as a halo of righteousness to the glory of our ʾĀbbä ʾĒlôḥīm.[23]

TDCJ did not discriminate against me for my long locks and beard as TDCJ falsely claimed was the reason I was fired, and the court dismissal of my case was not in accordance with Title VII law. Title VII law recognizes and protects the religious right of the Rastafari dreadlocks and Jewish peyes, this fact affirms my long locks and beard was not why TDCJ denied me reasonable accommodation, firing me illegally in violation of my Title VII rights. The court illegally dismissed my case for the same reason TDCJ was found guilty of violating my Title VII right of reasonable accommodation. The court stated the reason: the Court finds that TDCJ could not have reasonably accommodated Hebrew's religious beliefs without incurring an undue hardship."[24] The jewdicial|judicial system in America is systemically discriminatory with enmity against we the ʾḤéḇrëw ʾYìzräélìte ʾYäḥūdìm from the birth of this nation. I was fired by the Texas Department of Criminal Justice (TDCJ) and Harris County Sheriff's Office (HCSO) because I am a ʾḤéḇrëw ʾYìzräélìte ʾYäḥūdìm|Jews. The Courts and Americans at large still after four hundred years refuse to accept and recognize we the ʾḤéḇrëw ʾYìzräélìtes. I stated this in my deposition when I said "they", I am speaking about the Courts and Americans, don't do nothing about Jesus that is having long hair when the truth is

---

[23] ROA.659
[24] ROA.872

our ʾMäšḥiāc̣ḥ ʾĀ̆d̲äm did not have long hair he was not a ʾÑäzárìte. ʾĀ̆d̲äm drank wine, ʾÉlìyäḥ the ʾB̲âptìz̲ér was a ʾÑäzárìte as I am a ʾÑäzárìte, he drank no wine as ʾĀ̆d̲äm testified to saying as it is written:

> ʾṢḥ̣äkār 7:33 For ʾÉlìyäḥ the ʾB̲âptìz̲t came neither eating bread nor drinking wine; and ye say, He hath a devil.
> 34 The ʾṢ̂ôŋ of ʾËlôḥìm is come eating and drinking; and ye say, Behold a gluttonous man, and a winebibber, a friend of publicans and sinners!

Hebrew: They got pictures of him looking like this that doesn't look like me, a ʾḤéb̲r̈ëw ʾÑäzárìte, they love that. But here I'm in real ʾlìfé person-ʾḤéb̲r̈ëw ʾYìzräélìte ʾYäḥūdìm walking in our the ʾḤéb̲r̈ëw ʾfâìtḥ this is why you're stopping me:

Heather: I understand

Hebrew: So why are we still talking about my hair?

Heather: Dyer: But this is just as related to a correctional officer

Hebrew: You seen me why didn't anybody say this or even offer it. So then your gonna write this behind my back to justice you fired me again for my hair, no for my religion. For me being who I am.

Heather: So, if you had been offered a job as a Law Librarian instead of a correctional officer

Hebrew: If they would have offered it

Heather: Would you have taken it?

Hebrew: I don't know what I would have done because if you don't want me there, I'm telling you I wouldn't have been there. If they would have done something just in my heart that was fair because if you put me in a Library and treat me like a slave, I'm not gonna do that…They don't do nothing about Jesus they got pictures of him looking like this they love that. But this here

I'm in real life person walking in the faith and this is why you're stopping me.[25]

The underline enmity the Court and this nation has for me ˈHéb̲rëw a ˈHéb̲rëw ˈYìzräélìte ˈYähūdìm is what has kept America divided for more than four hundred years. I am a witness that the people of this nation at large are not evil and have no desire for a civil war. It is the principalities and powers at rule of this nation that are provoking war. I spoke of these principalities in my case declaring:

My exhibits shed light on the hidden unlawful actions TDCJ committed against me and others like unto me that is kept away from the eyes of the public. The bigotry and racism are not precipitated perse by the people, citizens of this city and country at large, rather bigotry and racism are disseminated upon the people by the principalities and powers of governments for their interests as ˈĂd̲ˈäm made known unto the world declaring as it is written:
Ephesians 6:12 For we wrestle not against flesh and blood, but against principalities, against powers, against the rulers of the darkness of this world, against spiritual wickedness in high places.

The common people have no understanding of the ˈwôrd̲s ˈĂd̲ˈäm spoke concerning principalities because even the so-called church is a principality. For understanding of principalities, there are three principalities in ˈEὐrôpä — Andorra, Liechtenstein, and Monaco—and one papacy, Vatican City.

Let my people go from the commonwealth that has fallen as prophesied by my ˈHéb̲rëw brothers the prophets in our the ˈHéb̲rëw year 5783|2023 is now being manifested in the earth. Ad'am.

---

[25] ROA.630 @ 25:00-30:00s

## CONCLUSION

The Court erred in the decision to dismiss my case based on Supreme Court case, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (U.S. 1973). McDonnell Douglas test requires the following conditions to be satisfied: I the plaintiff must establish a prima facie case of discrimination, I established a prima facie the court affirmed. TDCJ must produce evidence of a legitimate non-discriminatory reason for its actions. TDCJ must produce evidence of a legitimate non-discriminatory reason for its actions TDCJ did not produce any evidence to support of a legitimate non-discriminatory reason for its actions of denying me reasonable accommodation or for firing, violating my Title VII federal and constitutional rights. The Court erred in the decision to dismiss my case based on failing to show the TDCJ's grooming policies are a pretext for religious discrimination.  I did not state anywhere in my case that TDCJ's grooming policies are a pretext for religious discrimination. I explicitly requested the court to "cease and desist" TDCJ's discriminating, unlawful policies and practices. The court erred in the claim TDCJ could not have reasonably accommodated my religious beliefs without incurring an undue hardship. TDCJ eliminated its undue hardship defense in violating my Title VII federal and constitutional religious right to reasonable accommodation. TDCJ cannot claim it could not reasonably accommodate my religious beliefs without incurring an undue hardship for its defense when TDCJ is guilty of denying me reasonable

accommodation. The United States Department of Labor examples of religious accommodations include scheduling changes (arrivals, departures, floating/optional holidays, flexible work breaks and any other scheduling changes); voluntary shift substitutions and/or swaps; job reassignments, such as changes of position tasks and lateral transfers; and modifications to workplace practices, policies and procedures. TDCJ did not provide any evidence that legally supports its undue hardship allegation. Undue hardship "refers to any accommodation that would be unduly costly, extensive, substantial, or disruptive, or that would fundamentally alter the nature or operation of the business. This defense include: the size of the employer; the size of its budget; nature of its operation; number of employees; structure of its workforce and the nature and cost of the accommodation. Id. The larger the employer, the larger the budget and the greater the burden it will be expected to assume. See, e.g., *Nelson v. Thornburgh*, 567 F. Supp. 369, 376 and 380 (E.D. Pa. 1983); EEOC Title I Technical Assistance Manual at III-12.20. In order to withstand judicial scrutiny, an employer's undue hardship defense must have a strong factual basis. *Bryant v. Better Business Bureau of Greater Md., Inc*., 923 F. Supp. at 740-41 (D. Md. 1996). Id.; see also *Buckingham v. United States*, 998 F.2d 735, 740 (9th Cir. 1993) ("An employer, to meet its burden under the [Rehabilitation] Act, may not merely speculate that a suggested accommodation is not feasible."); *Henchey v. Town of North Greenbush*, 831 F. Supp. 960, 965 (N.D.N.Y. 1993) (under the

Rehabilitation Act, "the ultimate burden of proof on the issue of reasonable accommodation is on the employer.") (citing *Gilbert v Frank*, 949 F.2d 637, 642 (2d Cir. 1991)). The U.S. Supreme Court has defined "undue hardship" for purposes of Title VII as imposing "more than a de minimis cost" on the operation of the employer's business. There is no documented evidence TDCJ provided the court its net worth nor is there any documented evidence Bryan Collier provided the court his net worth that is required by law for the defendants TDCJ and Bryan Collier to adhere. The TDCJ did not provide the Court any documented material facts in this case of TDCJ or Bryan Collier's calculated "de minimis cost" is no more than 5 percent of the total power flows in both directions, calculated in accordance with the "5 percent test" set forth in IRS Notice 88-129. The "de minimis cost" is required pursuant with Title VII of undue hardship as imposing "more than a de minimis cost" on the operation of TDCJ and Bryan Collier's business. With the preponderance of factual evidence and martial fact I presented to the district court, it should grant my relief or at minimum, my case should have been brought to trial I demanded a trial by jury. For the district court to dismiss my case when the Equal Employment Opportunity Commission (EEOC) stated pursuant to the authority vested in me under Section 1601.21(d) (1) of the U.S Equal Employment Opportunity Commission's Procedural Regulations.[26] Thereby giving me the Right To Sue the

---

[26] ROA.659

Texas Department of Criminal Justice (TDCJ). The District Court found I established a prima facie case of failure to accommodate my religious belief. Nor did the TDCJ dispute that it did not accommodate my religious beliefs.[27] TDCJ violated my Title VII religious rights to reasonable accommodation. TDCJ violated my first amendment constitutional religious rights that Congress make no law respecting an establishment of religion or prohibiting its free exercise. TDCJ violated my fourteenth amendment rights that no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; the federal question of this case, did TDCJ violate my constitutional rights? the answer is unequivocally, yes. The court dismissal of my case on TDCJ's alleged undue hardship, based in a stereotyped bias assumption, I a righteous ʾH̱éḇrëw with the ʾH̱éḇrëw ʾNäẕárīte vow to the ʾmôst ʾhiẖ̇ ʾĔlôḥīm assert I would disavow from my ʾḣôly vow to bring illegal contraband in a prison facility inside my ʾḣôlylockš is not only racist it is asinine. TDCJ did not provide any proof of a ʾNäẕárīte, Rasta etc., found bringing contraband into a prison facility inside of his/her lockš or dreadlocks. The Court must overturn the district court decision.

---

[27] ROA.872

Respectfully submitted,

OF COUNSEL: ELIMEELCH SHMI HEBREW

PROSE PLANTIFF

/s/ Elimelech Shmi Hebrew
Elimelech Shmi Hebrew
306 N Forest Blvd
Houston, Texas 770903
(713) 820-2041(telephone)
Hebrew_ceo@divineunity1.com

## CERTIFICATE OF SERVICE

I CERTIFY THAT ON November 14, 2022, the foregoing document was filed in the Court's CM/ECF Document Filing System and served upon Appellant by the CM/ECF system.

/s/Elimelech Hebrew

## CERTIFICAE OF COMPLIANCE

1. This brief complies with the type-volume limitation of <u>FED. R. APP. P. 32(A)(7)(B)</u> because:

- this brief contains 13,000 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

2. This brief also complies with the typeface requirements of <u>FED. R. APP. P. 32(A)(5)</u> and the type requirements of <u>FED. R. APP. P. 32(A)(6)</u> because:

- this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 with a 14-point font named Times New Roman. except for footnotes, which are in 12-point Times New Roman font. Case names are in italics.

<u>/s/ Elimelech S. Hebrew</u>
Elimelech S. Hebrew
Prošе of Record for
Plaintiff -
Appellant Elimelech S.
Hebrew
Dated: November 14,
2022